IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

LARRY ISHMAEL,

                Defendant.

CRIMINAL ACTION
NO. 12-155

**OPINION**

**Slomsky, J.**                                                                    **February 16, 2021**

## I.      INTRODUCTION

Pro se Defendant Larry Ishmael ("Defendant"), who is serving a 144-month sentence, moves to modify his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the compassionate release statute. In his Motion (Doc. No. 297), Defendant requests either a reduction of his sentence to time served or that he be permitted to serve the remainder of his sentence in home confinement. He argues that the Court should grant his Motion because the conditions at his prison and his underlying health conditions place him at an increased risk of harm from the COVID-19 pandemic. Defendant also contends that his release would be consistent with the 18 U.S.C. § 3553(a) sentencing factors because he has served approximately seventy percent of his sentence and is a non-violent offender. The Government opposes Defendant's Motion, citing the severity of Defendant's underlying offenses, his ability to manage his medical conditions while incarcerated, his serving only seventy percent of his sentence, and the numerous measures the Bureau of Prisons ("BOP") has implemented to prevent the spread of COVID-19 in its facilities. For reasons that follow, Defendant's Motion (Doc. No. 297) will be denied.

II.     BACKGROUND

A.     Defendant's Criminal History

Defendant is presently incarcerated for his role in a tax refund conspiracy with Patricia Fountain, who is his wife and a former Internal Revenue Service ("IRS") employee.  (See Doc. No. 298 at 1.)  Friends of Defendant also were involved in the conspiracy.  (See id.)  From 2007 to 2012, Defendant and Fountain "utilized [Fountain's] knowledge of various tax credits and IRS internal auditing standards" to defraud the United States of over $2.2 million by "filing . . . false, fictitious, and fraudulent tax returns."  (Id.)  Defendant and his friends recruited taxpayer claimants to give them personal identifying information ("PII"), and they used the PII to submit false returns to receive refunds.  (See id.)  Defendant, Fountain, and their co-conspirators kept a portion of the refunds and gave the remainder to the claimants.  (See id. at 2.)

On July 26, 2013, after a jury convicted Defendant of conspiracies to defraud the United States and to file false claims with the IRS, he was sentenced to 144 months in prison.  (See id.) He has served approximately 106 months of his sentence,[1] which is over seventy percent of his total time, and his anticipated release date is June 2, 2023.  (See id. at 3.)  He is serving his sentence at the Satellite Camp at Federal Correctional Institution, Schuylkill ("FCI Schuylkill") and has not committed any disciplinary infractions while incarcerated.  (See id.)

B.     Defendant's Pro Se Motion to Modify Sentence and
        the Government's Response

On August 13, 2020, Defendant sent a request for compassionate release to the Warden at FCI Schuylkill.  (See Doc. Nos. 297 at 3; 298 at 3.)  On August 27, 2020, the Warden denied his request.  (See ids.)  Subsequently, on September 2, 2020, Defendant appealed the Warden's

---

[1]   Defendant has served approximately 93 months of his 144-month sentence and expects to receive approximately 13 months' credit for good conduct.  (See Doc. No. 298 at 3.)

denial of his request by submitting a second one, and on September 14, 2020, the Warden denied the second request.  (See ids.)  Thereafter, on October 27, 2020, Defendant filed the instant pro se Motion to Modify Sentence, requesting that his sentence be modified to time served or, alternatively, that he be released to home confinement for the remainder of his sentence.  (See Doc. No. 297 at 1.)

In his Motion, Defendant contends that his obesity, hypertension, and race would cause him to "become critically ill" if he were to contract COVID-19.  (Id. at 2.)  He argues that, in light of the COVID-19 pandemic, these medical conditions, his race, and the conditions at the FCI Schuylkill Satellite Camp are extraordinary and compelling reasons that warrant his release. (See id. at 2, 4.)  Moreover, Defendant claims that a modification of his sentence is consistent with the 18 U.S.C. § 3553(a) sentencing factors because he is a non-violent offender with "an exemplary behavioral record" who has served over seventy percent of his sentence of incarceration.  (Id. at 2; see also id. at 1.)

On December 30, 2020, the Government filed a Response to Defendant's Motion (Doc. No. 298).  In its Response, the Government submits that Defendant's hypertension and race are not extraordinary and compelling reasons for his compassionate release.  (See id. at 14-17.) Although Defendant's medical records show that he is pre-diabetic, this condition also is not an extraordinary and compelling reason for release.  (See id. at 14-15.)  The Government concedes, however, that Defendant's obesity "qualifies [him] . . . for consideration for compassionate release . . . ."  (Id. at 19.)  But it argues that Defendant's ability to control his weight while incarcerated, the BOP's efforts to combat COVID-19, and the § 3553(a) sentencing factors do not justify Defendant's compassionate release.  (See id. at 9-10, 19-21.)  Moreover, the Government discusses the BOP's policies enacted to prevent the spread of COVID-19 and avers

that these "aggressive efforts" have extended to the FCI Schuylkill Satellite Camp because "there has not been any reported positive case in the [S]atellite [C]amp."[2]  (Id. at 9.)

On January 22, 2021, Defendant filed a Reply to the Government's Response (Doc. No. 305).  In his Reply, Defendant further describes the conditions at FCI Schuylkill and the Satellite Camp during the COVID-19 pandemic and his medical conditions.  (See id. at 1-3.)  He also argues that the § 3553(a) factors weigh in his favor because he "knows and understands the severity of his crime," (id. at 5), and because he has taken classes while incarcerated "to reduce his risk of recidivism."  (Id. at 3.)

## III.    DISCUSSION

### A.    The Analytical Framework Regarding Motions for Compassionate Release Pursuant to § 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ."  18 U.S.C. § 3582(c).  There are, however, "a few narrow exceptions" to this general "rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, § 3582(c)(1)(A).  As amended by the recently enacted First Step Act, § 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted his administrative remedies.[3]  See § 3582(c)(1)(A)(i).  The statute provides, in part, that a court:

---

[2]  The Government notes, however, that a COVID-19 outbreak occurred in the main FCI Schuylkill institution that resulted in 160 inmates testing positive for COVID-19.  (See Doc. No. 298 at 9-10.)  It states that this outbreak "was confined to two of the nine housing units[,]" which allowed the infected inmates to remain isolated as they recovered.  (See id. at 10.)

[3]  A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by

[M]ay reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—

    (i) extraordinary and compelling reasons warrant such a reduction; . . .

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A).  Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason.  28 U.S.C. § 994(t).  Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission.  Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under § 3582(c)(1)(A) may be ordered where a court determines:

[A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . . that—

    (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .

    (2) the defendant is not a danger to the safety or any other

---

the warden of the defendant's facility, whichever is earlier . . . ."  18 U.S.C. § 3582(c)(1)(A). In other words, before a defendant can make such a request to the court, he "must at least ask the Bureau of Prisons (BOP) to do so on [his] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period.  See § 3582(c)(1)(A).

Here, Defendant has met the exhaustion requirement before filing his Motion.  On August 13, 2020, he sent a request for compassionate release to the Warden at FCI Schuylkill.  (See Doc. Nos. 297 at 3; 298 at 3.)  On August 27, 2020, the Warden denied Defendant's request.  (See ids.)  On October 27, 2020, over thirty days after Defendant sent his initial request, he filed the instant Motion to Modify Sentence (Doc. No. 297).  Because the Warden at FCI Schuylkill received and denied Defendant's request and over 30 days passed between Defendant's request and his filing of the instant Motion, he has met the exhaustion requirement.

> person or to the community, as provided in 18 U.S.C. §
> 3142(g); and

> (3)  the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition, (2) age, or (3) family circumstances. § 1B1.13, n.1(A)-(C). This Note states:

> Provided the defendant [is not a danger to the safety of any person
> or to the community], extraordinary and compelling reasons exist
> under any of the circumstances set forth below:

> (A) Medical Condition of the Defendant

>> (i)      The defendant is suffering from a terminal illness (i.e.,
>> a serious and advanced illness with an end of life
>> trajectory). A specific prognosis of life expectancy (i.e.,
>> a probability of death within a specific time period) is
>> not required. Examples include metastatic solid-tumor
>> cancer, amyotrophic lateral sclerosis (ALS), end-stage
>> organ disease, and advanced dementia.

>> (ii)     The defendant is—

>>> (I)      suffering from a serious physical or mental
>>> condition,

>>> (II)     suffering from a serious functional or cognitive
>>> impairment, or

>>> (III)    experiencing deteriorating physical or mental health
>>> because of the aging process,

>> that substantially diminishes the ability of the defendant to
>> provide self-care within the environment of a correctional
>> facility and from which he or she is not expected to recover.

> (B) Age of the Defendant. The defendant

>> (i)      is at least 65 years old;

    (ii)    is experiencing a serious deterioration in physical or mental health because of the aging process; and

    (iii)    has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)  Family circumstances.

    (i)    The death or incapacitation of the caregiver of the defendant's minor child or minor children.

    (ii)    The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1(D).[4]

    The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (quoting United States v. Fox, No. 14-03, 2019 U.S. Dist. LEXIS 115388, at *5 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended section 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A). See Rodriguez, 451 F. Supp. 3d at 395.

    In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious

---

[4]  Although by its express language section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement. See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using § 1B1.13 as "helpful guidance.").

condition that increases the likelihood of severe consequences from COVID-19." United States

v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotation omitted) (quoting

United States v. Brooks, No. 07-20047, 2020 U.S. Dist. LEXIS 85671, at *14 (C.D. Ill. May 15,

2020)).  In the Third Circuit, this means that "the mere existence of COVID-19 in society and the

possibility that it may spread to a particular prison alone cannot independently justify

compassionate release . . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).  In

addition, "[m]ost, though not all, of the cases where compassionate release has been granted also

involved some showing that COVID-19 is actually present, usually to a significant degree, in the

facility where the prisoner is incarcerated." Somerville, 463 F. Supp. 3d at 596.  Thus, "a

prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical

condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death

if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in

the facility where the prisoner is held." Id. at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must

then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is

warranted and, if so, the extent of such reduction. See id. at 588 ("[T]he Court must weigh [the]

extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C.

§ 3553(a)."). Section 3553(a) establishes factors for a court to consider in initially imposing a

sentence.  Not every factor is applicable, however, when considering a motion for compassionate

release.  In the instant case, the applicable factors are:

> (1) the nature and circumstances of the offense and the history and
> characteristics of the defendant;
>
> (2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

. . . [and]

(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6).  Therefore, if a balance of a defendant's extraordinary and compelling reasons with the § 3553(a) factors support a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

**B.      Defendant's Motion to Reduce Sentence Will Be Denied**

Defendant's Motion will be denied.  Despite the Government's concession that Defendant's obesity is an extraordinary and compelling reason for his release, the relevant § 3553(a) factors weigh against a reduction or modification of his sentence.[5]  Each of these matters is discussed in turn.

**1.      Defendant's Obesity May Present an Extraordinary and Compelling Reason for His Release**

Defendant contends that he has shown an extraordinary and compelling reason for his release because his obesity, hypertension, and race put him in danger of "grave health consequences or death" if he contracts COVID-19.   (Doc. No. 297 at 2.)   In addition,

---

[5]   Because the Court will deny Defendant's Motion for the reasons given, it is not necessary to determine whether a reduction in Defendant's sentence is also consistent with applicable policy statements of the Sentencing Commission.

Defendant's medical records show that he is pre-diabetic.  (See Doc. No. 298 at 5.)  The Government submits that Defendant's hypertension and pre-diabetes do not establish the required particularized vulnerability to COVID-19 and its effects to constitute an extraordinary and compelling reason for his release.[6]  (See id. at 4-5.)  Moreover, race is not an extraordinary and compelling reason for release.[7]  The Government does concede, however, that Defendant's obesity meets the U.S.S.G. § 1B1.13 Application Note 1(A) definition of extraordinary and compelling reasons for release.  (See id. at 15-16.)  This condition, the Government states, is a risk factor identified by the Centers for Disease Control and Prevention ("CDC") as "a definite [COVID-19] risk factor."  (Id. at 18.)

For purposes of this Motion, the Court will assume, without deciding, that Defendant's obesity presents an extraordinary and compelling reason for his compassionate release in light of the COVID-19 pandemic.[8]  Because the Government concedes that Defendant's obesity presents

---

[6] Additionally, there is an actual, non-speculative risk of contracting COVID-19 at FCI Schuylkill.  As of the date of the filing of this Opinion, 10 inmates and 14 staff members have tested positive for COVID-19 at FCI Schuylkill.  See COVID-19 Cases, FEDERAL BUREAU OF PRISONS (Feb. 16, 2021), https://www.bop.gov/coronavirus/.  These current numbers "are based on the most recently available confirmed lab results involving open cases . . . ."  Id. (emphasis omitted).  The BOP has not stated whether these cases are in the FCI Schuylkill Main Camp or in the Satellite Camp where Defendant is housed.  Despite this uncertainty, these COVID-19 infections show that the virus is still present, to a significant degree, at FCI Schuylkill.  The Court notes, however, that the BOP has implemented precautions to quarantine infected and symptomatic inmates to contain the virus's spread.  (See Doc. No. 298 at 5-10.)

[7] Although "[c]urrent data suggests that African-Americans have been disproportionately affected by COVID-19 hospitalizations and deaths[,] [i]t is unclear . . . whether race is an independent risk factor" or whether these disproportionate effects are caused by socioeconomic factors.  United States v. Green, No. 05-205, 2020 WL 3642860, at *4 (W.D. Pa. July 6, 2020).

[8] The CDC notes that a Body Mass Index ("BMI") of 30 $kg/m^2$ or greater constitutes obesity and is an actual COVID-19 risk factor.  See People with Certain Medical Conditions, CENTERS FOR DISEASE AND CONTROL PREVENTION (Dec. 29, 2020),

a COVID-19 risk factor, and the Court will consider this as an extraordinary and compelling reason for his release, the Court need not address whether his other medical conditions also meet this threshold.[9]   However, it is noted that other courts have rejected claims of extraordinary and compelling reasons for release based on obesity, hypertension, and pre-diabetes.   See, e.g., United States v. Daniels, No. 15-127, 2020 WL 4674125, at *3 (E.D. Pa. Aug. 12, 2020) (stating defendant's use of Albuterol inhaler does not preclude possible normal lung function); United States v. Whiteman, No. 15-298, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (finding mild obesity and hypertension fall short of extraordinary and compelling reasons for release); United States v. Snell, No. CCB-17-602, 2020 WL 4053823, at *2 (D. Md. July 20, 2020) (denying defendant's motion for compassionate release, noting that prediabetes does not increase vulnerability to COVID-19); United States v. Falci, No. 17-228, 2020 WL 3410914, at *4 (D.N.J. June 22, 2020) (denying defendant's motion for compassionate release although defendant suffered from hypertension because "[t]here is no indication that Defendant suffers from pulmonary hypertension or any other 'serious heart condition' that the CDC has identified as a high-risk factor."); United States v. Towel, No. 17-519-6, 2020 WL 2992528, at *4-5 (E.D. Pa. June 4, 2020) (determining mild, exercise-induced asthma not a COVID-19 risk factor).

---

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.  Defendant is 74 inches tall and on October 15, 2020 he weighed 277 pounds.  (See Doc. No. 298 at 5.)  Based on his height and October 2020 weight, Defendant's BMI is 35.6 $kg/m^2$, which is above the CDC's obesity threshold.  (See id.)

[9]   Defendant is forty-eight years old.  (See Doc. No. 298 at 18.)  He does not claim that he suffers from either a terminal illness or a serious cognitive impairment, or that he is the caregiver to minor children.  See § 1B1.13 n.1(B)-(C).  Thus, these factors listed in the Sentencing Guideline Manual, see id., are not relevant here.

**2.    The § 3553(a) Sentencing Factors Do Not Weigh in Favor
of Defendant's Release**

Assuming, <u>arguendo</u>, that Defendant's obesity presents an extraordinary and compelling

reason for his release, the relevant § 3553(a) factors do not support either Defendant's

compassionate release to home confinement or a sentence reduction.  As a threshold matter, other

courts in this District have denied compassionate release in similar cases where, despite

extraordinary and compelling circumstances warranting a defendant's release, the § 3553(a)

sentencing factors weighed against granting such relief.  See, e.g., United States v. Spivey, 471 F.

Supp. 3d 621, 623 (E.D. Pa. 2020) (footnote omitted) (denying compassionate release based on

§ 3553(a) sentencing factors despite "assum[ing] . . . that [d]efendant's underlying health

conditions . . . present extraordinary and compelling reasons for compassionate release in light of

the COVID-19 pandemic."); United States v. Phillips, No. 09-718, 2020 WL 5076753, at *4

(E.D. Pa. Aug. 27, 2020) ("Even if [defendant's] particular combination of medical

conditions . . . place him at a high risk, . . . [he] would not be entitled to a compassionate release

due to his history of violence . . . ."); Daniels, 2020 WL 4674125, at *2-3 (denying

compassionate release despite Government's concession that defendant's obesity was an

extraordinary and compelling reason for release); United States v. Holmes, No. 08-495, 2020 WL

4504440, at *3 (E.D. Pa. Aug. 5, 2020) ("Even if defendant has the requisite serious medical

conditions, the [c]ourt's analysis does not end here.").

Turning to the § 3553(a) sentencing factors and their application to Defendant, the

relevant sentencing factors counsel against Defendant's release at this time.  First, the Court has

examined the nature and circumstances of the offense and Defendant's history and

characteristics.  See § 3553(a)(1).  For about five years, Defendant, his wife, and others engaged

in an extensive scheme that defrauded the federal Government of over $2.2 million.  (See Doc.

No. 298 at 1.)  Defendant harnessed his wife's knowledge as an IRS employee to prepare false tax returns, teach others how to propagate the scheme, and recruit claimants to participate in the fraud.  (See id.)  Because of his participation in these crimes over a five-year period, Defendant owes nearly $1.8 million in restitution.  (See Doc. No. 224.)  And although Defendant asserts that he is a non-violent offender who "knows and understands the severity of his crime," (Doc. No. 305 at 5; see also Doc. No. 297 at 1), there is no assurance that he would be deterred from committing additional crimes if released.  Defendant has a prior controlled substance conviction for which he was sentenced to twelve months' incarceration.  His time served did not deter him from participating in the tax fraud scheme over the five-year period.  Moreover, despite Defendant's obesity, his medical records show that his weight is appropriately managed while incarcerated.  (See Doc. No. 298 at 19.)  Furthermore, Defendant was obese when he was engaged in the fraud scheme and when he was sentenced.  (See id. at 2, 19.)

Second, the Court has also considered whether Defendant's release would reflect the seriousness of the offenses, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by him.  See § 3553(a)(2)(A)-(C). Defendant has served approximately seventy percent of his total sentence of incarceration (see Doc. No. 298 at 3); however, the magnitude of his crimes and his criminal history warrant the entire sentence he received.[10]  At this time, a reduction in his sentence would not serve any of the above considerations.

---

[10]  In United States v. Pawlowski, 967 F.3d 327, 331 (3d Cir. 2020), the Third Circuit held the following regarding 18 U.S.C. § 3553(c)(1)(A) and its requirement that a court reviewing a motion for compassionate release consider the § 3553(a) factors to the extent they are applicable:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time

Finally, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct as Defendant.   See § 3553(a)(6).   Defendant received a sentence within the range set by the Sentencing Guidelines, (see Doc. No. 252 at 7 n.6), which Congress created to specifically address sentencing disparities.  A reduction in Defendant's sentence would undermine the goal of avoiding unwarranted sentence disparities among similarly situated defendants and ensuring consistent punishment for similar offenses.

For all these reasons, none of the applicable § 3553(a) factors favor either Defendant's release to home confinement or a sentence reduction.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Reduce Sentence (Doc. No. 297) will be denied.  An appropriate Order follows.

---

remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated inmates—inform whether immediate release would be consistent with those factors.